Signed: November 23, 2009

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                          No. 03-42872 TG
                                               Chapter 13
TERRY MARLENE ANDERSON,

        Debtor.
_____/

TERRY MARLENE ANDERSON,                        A.P. No. 09-4162 AT

        Plaintiff,

   vs.

STATE OF CALIFORNIA,
FRANCHISE TAX BOARD,

        Defendants.
_____/

**MEMORANDUM OF DECISION**

In the above-captioned adversary proceeding, plaintiff Terry Marlene Anderson ("Anderson") seeks a judgment holding the defendant Franchise Tax Board (the "FTB") in civil contempt for violation of the discharge injunction. See 11 U.S.C. § 524(a)(2). Anderson contends that, by attempting to collect additional taxes for the year 2000 in 2006, the FTB violated the injunction that arose from the bankruptcy discharge she received in 2003. The FTB abated its claim for additional taxes without conceding any improper conduct.

Anderson now seeks reimbursement of her attorneys' fees, which requires the Court to determine whether the FTB's conduct did in fact violate the discharge injunction.

The Court concludes that it did. As discussed below, the FTB's claim was barred by the applicable statute of limitations. In addition, the claim was a pre-petition claim that was incurred before Anderson filed her bankruptcy case and which the FTB could have discovered in time to file a proof of claim. Therefore, it was subject to her discharge. Anderson is entitled to her reasonable attorneys' fees as a result of the FTB's violation of the discharge injunction. However, based on recent Ninth Circuit authority, she may only recover the fees she incurred until such time as the FTB agreed to abate its claim. See Sternberg v. Johnston, 582 F.3d 1114, 1123-24 (9th Cir. 2009).

**SUMMARY OF FACTS**

Anderson filed a petition under chapter 13 of the Bankruptcy Code on May 15, 2003. The Court confirmed Anderson's plan on November 26, 2003. She completed the plan and received a discharge on August 9, 2004. The FTB received notice of Anderson's discharge.

When she filed, Anderson scheduled the FTB as an unsecured priority creditor, listing as owed state income tax for 1998 and estimated state income tax for 2001. The FTB filed a timely proof of claim for these years. It did not file a proof of claim for the year 2000. At that time, the FTB did not believe that Anderson owed any additional state income taxes for this year. Anderson had timely

2

filed her year 2000 federal and state income tax returns and had paid the amounts indicated on the forms.

In or about 2003, the Internal Revenue Service (the "IRS") selected Anderson's year 2000 federal tax return for audit. On February 21, 2005, the IRS assessed an additional $17,285 in federal taxes for the year 2000. Anderson did not notify the FTB of the additional assessment by the IRS. However, the FTB received notice of the additional assessment from the IRS on May 4, 2005, from the IRS.[1]

On July 10, 2006, based on the IRS assessment, the FTB issued a Notice of Proposed Assessment of additional income taxes for the year 2000 in the amount of $6,655. Anderson challenged FTB's proposed assessment, contending that it had been discharged in her bankruptcy case. The FTB disregarded the challenge and issued a Notice of Action. Thereafter, it sent Anderson two Income Tax Due Notices. Anderson then had her bankruptcy counsel contact the FTB on Anderson's behalf and advise it of Anderson's bankruptcy discharge. Nevertheless, the FTB continued with its collection efforts, issuing a Past Due Notice.

Between September and November 2007, Anderson's counsel communicated with the FTB several times, by phone and by fax, regarding Anderson's tax liability. The FTB maintained that the taxes had been properly assessed and had not been discharged in Anderson's bankruptcy. It argued that the taxes represented a post-

---

[1] On May 1, 2006, the IRS abated its claim for additional taxes for the year 2000. Neither party presented any evidence regarding the IRS's reason for abating its claim.

3

discharge obligation because it had no way of knowing about them until after Anderson received her discharge.

On November 2, 2007, without explanation, the FTB informed Anderson of its decision to abate the year 2000 tax assessment. However, the FTB does not concede that its claim was discharged or that its prior conduct violated the discharge injunction.

The FTB declined to reimburse Anderson for attorney's fees incurred over the course of their negotiations. As a result, on April 1, 2009, Anderson filed the above-captioned adversary proceeding against FTB to recover these fees.

**DISCUSSION**

Anderson advances two arguments as to why the FTB's attempt to collect the additional year 2000 income taxes was improper. First, she contends that the FTB's assessment of additional income tax for the year 2000 was improper under state law. Alternatively, she contends that the FTB's attempt to collect the tax debt violated the discharge injunction. Finally, she asserts the right to her attorneys' fees for violation of the discharge injunction. These three issues are addressed below.

**1. Was the FTB's assessment of the year 2000 taxes valid?**

Anderson argues that the FTB's assessment was invalid because it was barred by the statute of limitations. Normally, the FTB is required to issue a Notice of Proposed Assessment within four years from the date the return is due or the date it is filed, whichever is later. Cal. Rev. & T. Code § 19057(a). Anderson timely filed her 2000 California tax return on April 15, 2001. Thus, the normal

4

statute of limitations ran on April 15, 2005. The FTB did not issue its Notice of Proposed Assessment until July 10, 2006.

However, the FTB's statute of limitations is reopened when the IRS assesses additional taxes. If the FTB receives notification of the IRS assessment from the taxpayer within six months of the final assessment, the FTB has two years from the date the notice is received to assess additional taxes. Cal. Rev. & T. Code § 19059(a). If not, it may assess the additional taxes at any time. Cal. Rev. & T. Code § 19060(a); see <u>Ordlock v. Franchise Tax Bd.</u>, 38 Cal. 4th 897, 911-912 (Cal. 2006).[2]

As stated above, the FTB received notification of the additional IRS assessment on May 4, 2005 and issued a Notice of Proposed Assessment on July 10, 2006. Ostensibly, therefore, but for Anderson's bankruptcy discharge, it would seem that the FTB's assessment was proper. However, Anderson asserts that the FTB's assessment was invalid because the IRS assessment was made after the expiration of its statute of limitations. As a result, according to Anderson, the statute of limitations applicable to the FTB, which had previously expired, was never reopened. Based on the evidence presented (and that not presented), the Court finds in favor of Anderson on this issue.

The normal statute of limitations for assessment of federal income taxes is three years from the date the return was due or

---

[2] Anderson contends that the two year limitations period applies regardless of who gives the FTB notice. However, because the FTB's assessment was made within two years, we need not resolve this dispute.

5

filed, whichever is later. 26 U.S.C. § 6501. When the IRS issues a statutory notice of deficiency, the normal three-year statute of limitations is extended for an additional 150 days: i.e., 60 days after the 90 day period within which the taxpayer may file a petition with the Tax Court, challenging the assessment. 26 U.S.C. § 6503. Anderson's 2000 tax return, which she timely filed, was due on April 15, 2001. Therefore, absent a waiver of the statute of limitations by Anderson, the IRS was required to assess any additional taxes by September 12, 2004. The IRS did not make the assessment until February 21, 2005.

The FTB has produced no evidence that Anderson waived the statute of limitations applicable to the IRS. Since the IRS assessment was untimely and thus invalid, the FTB did not receive a new period of time within which to assess the additional taxes, and its attempt to assess them was improper without regard to Anderson's bankruptcy discharge.

**2. Was FTB's claim for year 2000 taxes discharged?**

Anderson also contends that the FTB's assessment of additional taxes for the year 2000 violated the discharge injunction. 11 U.S.C. § 524. The tax claim existed as a potential claim before Anderson filed her bankruptcy case. The FTB had notice of Anderson's bankruptcy filing and could have filed a proof of claim for the additional taxes within the claims bar date. Therefore, Anderson reasons, it was discharged in her bankruptcy case, and the FTB violated the discharge injunction when it later tried to enforce the

claim. In support of this position, she cites <u>Joye v. Franchise Tax Board</u>, 578 F.3d 1070 (9th Cir. 2009).

In <u>Joye</u>, the debtors filed a bankruptcy petition in March 2001. They scheduled the FTB as a priority creditor with a $10,000 claim for the year 2000. The claims bar date was September 3, 2001. The FTB received notice of the bankruptcy filing and did not file a claim. After the claims bar date had passed, the Joyes filed their state income tax return, reflecting that they owed taxes and penalties for the year 2000 totaling $28,178. No payment was made with the return. Because it had failed to file a proof of claim, the FTB received no payment through the Joyes' plan, even of the scheduled $10,000. After the Joyes completed the plan and received a discharge, the FTB attempted to collect the outstanding taxes for the year 2000. The Joyes filed an adversary proceeding for violation of the discharge injunction. The Ninth Circuit held for the Joyes. <u>Id.</u> at 1081.

The FTB argues that the outstanding taxes survived the discharge by virtue of 11 U.S.C. § 1305 and that the taxes constituted a post-petition claim because payment was not yet due when the Joyes filed their bankruptcy petition. This argument was rejected by the <u>Joye</u> court. Section 1305 permits, but does not require, a taxing authority to file a proof of claim in a chapter 13 case for post-petition taxes. The <u>Joye</u> court held that § 1305 was inapposite as the taxes in question were pre-petition taxes. <u>Joye</u>, 578 F.3d at 1074. It noted that the taxes in question were incurred before the bankruptcy was filed although not due to be paid until afterwards.

7

It noted the broad definition of "claim" in the Bankruptcy Code, which includes unliquidated, contingent, and unmatured claims. It concluded that this definition was broad enough to cover a debt such as the Joyes' year 2000 tax debt. Id. at 1075-77.

In Joye, the FTB also argued that, regardless of whether its tax claim was properly viewed as pre-petition or post-petition, it would be fundamentally unfair under the circumstances to treat its tax claim as discharged. Since the claims bar date expired before the Joyes filed their tax return, the FTB had no way to determine whether the Joyes owed any taxes for 2000. The Court rejected this argument. It found that the FTB had received adequate notice of the bankruptcy filing and that the Joyes had listed the FTB as holding a priority claim, albeit for a lesser amount than ultimately proved due. The FTB could have filed an estimated claim within the bar date and amended it later when the precise amount of the debt was known. Moreover, it found no evidence that the Joyes had acted in bad faith. Id., at 1080.

The FTB argues that it would be fundamentally unfair to treat as discharged its claim for additional year 2000 taxes. It contends that it had no way of knowing about the tax claim until after the claims bar date. It cites case authority holding that a claim does not arise until such time as it may be fairly contemplated by the claimant. See In re SNTL Corp., 571 F.3d at 839; In re Jensen, 995 F.2d 925, 930-31 (9th Cir. 1993). The Court finds this argument unpersuasive. Anderson timely filed her tax return for the year 2000 and timely paid what she believed she owed. The FTB could have

8

conducted an audit of the return and discovered that she owed additional taxes for that year before Anderson's 2003 bankruptcy filing. It was not required to rely on the IRS audit process. Therefore, the Court concludes that, not only was the FTB claim barred by the applicable statute of limitations, the claim was also discharged in Anderson's bankruptcy case. Therefore, the FTB's collection efforts post-bankruptcy violated Anderson's discharge.

**3. Does FTB's conduct warrant sanctions for violation of the discharge injunction?**

Anderson seeks reimbursement of her attorneys' fees from the FTB as a sanction for the FTB's violation of the discharge injunction. The Court concludes that Anderson is entitled to recover the fees incurred prior to the commencement of the adversary proceeding but not those incurred thereafter.

Successful completion of a chapter 13 payment plan results in the entry of a discharge injunction with respect to dischargeable pre-petition debts as provided by 11 U.S.C. § 524(a)- "A discharge in a case under this title ... operates as an injunction against the commencement or continuation of an action... to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Although 11 U.S.C. § 524 does not provide any internal enforcement mechanism, civil contempt is the normal remedy for violation of the discharge injunction. Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002). Under well-settled Ninth Circuit law, bankruptcy courts have the power to hold a party in civil contempt under 11 U.S.C. § 105. Id. at 509; In re Bennett,

9

298 F.3d 1059, 1069 (9th Cir. 2002); see also In re Rainbow Magazine, Inc., 77 F.3d 278, 284 (9th Cir. 1996).

In Bennett, the Ninth Circuit endorsed the two-prong test used by the Eleventh Circuit to determine whether sanctions should be awarded for violation of the discharge injunction. The Court stated that, "to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." Bennett, 298 F.3d at 1069, citing In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996). In Hardy, the Eleventh Circuit remanded the action to the bankruptcy court, stating that sanctions would be warranted if the court found that the Internal Revenue Service had received notice of the debtor's discharge and "intended the actions which violated the stay."[3] Hardy, 97 F.3d at 1930. Bankruptcy courts have observed that "[a] creditor takes a calculated risk, under threat of contempt of 524 or sanctions under the 362 automatic stay where it undertakes to make its own determination of what the stay or discharge in bankruptcy means." In re Gray, 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989); See also In re Clark, 49 B.R. 704, 707 (Bankr. D. Guam 1985).

In this case, it is undisputed that the FTB had knowledge of the Debtor's bankruptcy case and of the entry of Anderson's discharge. Its good faith belief that the discharge injunction did not apply is not a viable defense. See Bennett, 298 F.3d at 1069; Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002).

---

[3] Although the Hardy court refers to a violation of the "stay," the case actually involves a violation of the discharge injunction. Hardy, 97 F.3d at 1387.

10

Moreover, its conduct in continuing to try to collect the tax debt was clearly voluntary. Because FTB took intentional actions in violation of the discharge injunction with knowledge of the bankruptcy discharge that gave rise to the injunction, sanctions for civil contempt are warranted.

Appropriate sanctions "compensate the debtor for her sustained losses as a sanction for civil contempt upon a creditor who violates a discharge injunction." Walls v. Wells Fargo Bank, N.A., 255 B.R. at 44. In this case, Debtor incurred attorney's fees from the time the FTB was informed that the taxes had been discharged until it decided to abate the taxes in November of 2007. Anderson also incurred attorney's fees for prosecuting this civil contempt action against the FTB. However, in Sternberg v. Johnston, 582 F.3d 1114, 1123-24 (9th Cir. 2009), the Ninth Circuit recently held, in the context of an automatic stay violation, that contempt sanctions could not be recovered for litigating the right to attorneys' fees. It based this holding on the American Rule, requiring litigants to bear their own attorneys' fees absent a contract or statute to the contrary. Id. at 1122.

The Ninth Circuit would likely reach the same conclusion with respect to a discharge violation. The FTB had already abated its claim when the adversary proceeding was filed. Therefore, Anderson is not entitled to recover any fees incurred for the litigation.

**CONCLUSION**

The FTB's assessment of Anderson's year 2000 taxes was invalid because the taxes were assessed outside the applicable statute of

11

limitations. The IRS assessment, which triggered the FTB's assessment, was invalid as having been made after the expiration of its statute of limitations. Therefore, the FTB's statute of limitations was not reopened. The FTB had an allowable pre-petition claim for additional taxes incurred during 2000 which it could have discovered prior to the expiration of the original statute of limitations. No proof of claim was filed for these additional taxes, and the claim was discharged. The FTB took intentional actions to enforce a claim that had been discharged despite knowledge of the discharge. The FTB's good faith belief that the claim had not been discharged is not a defense. Moreover, it is not fundamentally unfair to hold the claim discharged as the FTB could have discovered the existence of the claim before Anderson filed her bankruptcy. As a consequence, the FTB must pay sanctions to compensate Anderson for the attorneys' fees she incurred up to the time the FTB abated its claim. She may not recover her fees for bringing the adversary proceeding.

The parties are directed to meet and confer concerning the amount of recoverable fees and, unless unable to agree, counsel for Anderson is directed to submit a proposed form of judgment in accordance with this decision. If unable to agree, either party may contact the judge's calendar clerk to arrange for a hearing.

END OF DOCUMENT

12

COURT SERVICE LIST

Robert N. Kolb
Law Offices of Robert N. Kolb
312 4th Street
Antioch, CA 94509

Kristian D. Whitten
Deputy Attorney General
State of California, Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004